James Owen **LINNETT**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 63864.

Court of Criminal Appeals of Texas, En Banc.

March 30, 1983.

Bob W. Robertson, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Calvin A. Hartmann, Paul Coselli, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

CLINTON, Judge.

Withdrawn is the opinion on original submission by which the Court reversed the judgment of the conviction after finding that a search of an automobile being driven by appellant was not within the scope permitted by *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). At the instance of the State Prosecuting Attorney, we granted leave to file State's Motion for Rehearing in order to consider the application in Texas of the "workable rule" announced by the Supreme Court July 1, 1981 in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)—well after the instant stop and search and trial before the court in 1979, and also after briefs had been filed in this cause in early 1980.[1] After summarizing the facts of the matter, we will adhere to the result reached on original submission, though for somewhat different reasons.

Houston Police Officer C.G. Malone was on patrol on February 12, 1979. At the intersection of Old Katy Road and Sherwood Forest Drive Officer Malone observed the appellant driving a green Pontiac sedan. As appellant turned left in front of the police vehicle, Malone noticed the rear license plate on the Pontiac had expired. Officer Malone stopped appellant to give him a traffic ticket. Appellant, who was alone, got out of his car and came back towards the officer who parked behind appellant's vehicle. Appellant produced a driver's license. He appeared nervous to

Malone and kept walking back towards his car. Malone instructed appellant to stand beside him while he wrote the ticket. There was no evidence that appellant was intoxicated or under the influence of drugs. There was no testimony that Officer Malone frisked or searched appellant's person. Malone saw a car window was down and approached appellant's car. He observed "a brown canvas zipper bag laying open in the front seat—in the middle of the front seat." Malone reached in and pulled the bag over and looked at it. The bag contained ". . . I think like a knife, and some jewelry-looking stuff," and "a little black film canister." Malone removed the canister from the bag and opened it. The canister contained pills. A chain of custody was established and a chemist testified 20 of the pills were hydromorphone.

The Supreme Court granted certiorari in *Belton v. New York,* supra, "to consider the constitutionally permissible scope of a search in circumstances such as these," *id.,* 453 U.S. at 457, 101 S.Ct. at 2862. And the circumstances were that a New York State Trooper stopped a speeding automobile and discovered that none of the four male occupants owned the vehicle or was related to the owner. But while making those inquiries the trooper smelled burnt marihuana and saw on the floorboard an envelope marked "Supergold" that he associated with marihuana; therefore, he "directed the men to get out of the car, and placed them under arrest for the unlawful possession of marihuana," *id.,* at 455–456, 101 S.Ct. at 2862. The trooper then patted down each man and directed each to stand apart from others; he picked up and inspected the "Supergold" envelope and, finding that it contained marihuana, he gave each arrestee *Miranda* warnings and searched the person of each one of them. He then searched the passenger compartment of the car and when he got to the back seat the trooper found a leather jacket belonging to Belton;

---

1. The cause was submitted November 17, 1982 on original briefs sans supplementation by either party and without oral argument. In short, application of the *Belton* formulation was not addressed in the initial stages of this appeal.

unzipping one of its pockets, he discovered some cocaine. Placing the jacket in his own unit, the trooper drove the four arrestees to a nearby police station. *Ibid.*

Revisiting principles applied in *Chimel v. California,* supra, 395 U.S. at 763, 89 S.Ct. at 2040, "that a lawful *custodial arrest* creates a situation which justifies the contemporaneous search without a warrant of the person arrested and the immediately surrounding area"[2]—the *Belton* Court held that "when a policeman has made a lawful *custodial arrest* of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," *Belton,* supra, 453 U.S. at 460, 101 S.Ct. at 2864. The Supreme Court added the following caveat:

> "Our holding today does no more than determine the meaning of *Chimel's* principles in this particular and problematic content. It in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful *custodial arrests.*" *Id.,* 453 U.S. at 460, n. 3, 101 S.Ct. at 2864, n. 3.

Applying its holding to Belton himself the Supreme Court took pains to point out, "It is not questioned that the respondent was the subject of a lawful *custodial arrest* on a charge of possessing marihuana," *id.,* 453 U.S. at 462, 101 S.Ct. at 2865, the validity of which had not been questioned, *id.,* 453 U.S. at 460, n. 2, 101 S.Ct. at 2864, n. 2. The jacket in the passenger compartment searched by the trooper immediately following that arrest "was thus within the area we have concluded was 'within the arrestee's immediate control' within the meaning of the *Chimel* case," and the search of the jacket "therefore, was a search incident to a lawful *custodial arrest* ..." *id.,* 453 U.S. at 462–463, 101 S.Ct. at 2865.

The *Belton* opinion does not define "custodial arrest" for us, but in a similar context the Supreme Court has upheld a "full search of the person" of one subjected to a "lawful custodial arrest." *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) and *Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). The opinion in *Robinson* proceeds on the assumption by the Court of Appeals and the concession by Robinson that the arresting officer "had probable cause to arrest the respondent, and he effected a full-custody arrest,"[3] *id.,* 414 U.S. at 220–221, 94 S.Ct. at 470. Similarly, in *Gustafson* the parties conceded that the officer "had probable cause to arrest ..., and that he took petitioner into custody *in order to transport him to the stationhouse* ...," *id.,* 414 U.S. at 262, 94 S.Ct. at 490.

The Supreme Court further demonstrated its own delineation of the meaning of "lawful custodial arrest" effected in both cases by distinguishing a scenario alluded to by the Court of Appeals, *viz:*

> "The opinion of the Court of Appeals also discussed its understanding of the law where the police officer makes what the court characterized as 'a routine traffic stop,' i.e., where the officer would simply issue a notice of violation and allow the offender to proceed. Since in this case the officer did make a full-custody arrest of the violator, *we do not reach the question* discussed by the Court of Appeals." *Robinson,* supra, 414 U.S. at 236, n. 6, 94 S.Ct. at 477, n. 6.

Whatever its impact in other factual situations, we find that the "bright line" rule

---

**2.** All emphasis is added by the writer of this opinion unless otherwise indicated.

**3.** The Supreme Court noted the testimony of a District of Columbia Metropolitan Police Department Training Division instructor that "a full custody arrest" is one where an officer "would arrest a subject and subsequently transport him to a police facility for booking," and observed that "such operating procedures are not, of course, determinative of the constitutional issues presented," *Robinson,* supra, 414 U.S. at 221, n. 2, 94 S.Ct. at 470 n. 2. Still, the definition given by the instructor was acceptable for purposes of the opinion in *Robinson,* for the Court stresses that "the danger to an officer is far greater in the case of the extended exposure which follows the *taking of a suspect into custody and transporting him to the police station* ...," *Robinson,* supra, 414 U.S. at 234–235, 94 S.Ct. at 476–477.

drawn in *Belton* is not applicable in the case at bar "because appellant was not in 'custodial arrest' at the time of the search in question," *Adams v. State,* 634 S.W.2d 785, 789 (Tex.App.—Austin 1982, no history).

This Court has discerned from *United States v. Robinson* and *Gustafson v. Florida,* both supra, that "the arrest that justifies a search incident must now qualify as a 'custodial' one," *Christian v. State,* 592 S.W.2d 625, 629, n. 11 (Tex.Cr.App.1980) cert. denied, 446 U.S. 984, 100 S.Ct. 2966, 64 L.Ed.2d 841 (1980). Here, as in *Thomas v. State,* 572 S.W.2d 507, 509 (Tex.Cr.App. 1976):

> "The search of appellant's automobile was not a search incident to arrest.... [A]ppellant was being detained while a traffic ticket was being written and was not placed under arrest until after the pills were found. Cf. *Wussow v. State,* Tex.Cr.App., 507 S.W.2d 792. Appellant was not in custody at the time of the search, and thus the search was not incident to arrest for the traffic violation. Cf. *U.S. v. Robinson,* 414 U.S. 218 [94 S.Ct. 467, 38 L.Ed.2d 427].... "

Accordingly, searches of the brown canvas zipper bag and of the little black film canister within the bag are not within the scope of a search permissible under the "bright line" rule of *New York v. Belton,* supra.[4]

The judgment of conviction is reversed and the cause is remanded to the trial court.

TEAGUE, J., not participating.

---

4. Appellant did not claim the intrusions are barred by our own law of search and seizure bottomed on Article I, § 9 of the Bill of Rights and 1.06, V.A.C.C.P., so we have no reason to address that question. Nor do we decide that the *Belton* rule is consistent with State law. Our conclusion simply is that the rule is not applicable to the facts of this cause.