**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DANIEL DWIGHT ROLLINS,

Defendant - Appellant.

No. 05-4324

D. Utah

(D.C. No. 2:04-CR-747-TC)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BEAM**,[**] and **HARTZ**, Circuit Judges.

---

Daniel Dwight Rollins was found guilty of being a user or addict of a controlled substance in possession of a firearm and ammunition after entry of a conditional plea. He now appeals, claiming that the district court[1] erred in denying his motion to suppress evidence discovered during a search incident to his arrest.

We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable C. Arlen Beam, United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation.

[1]The Honorable Tena Campbell, United States District Judge for the District of Utah.

## I.     BACKGROUND

On July 29, 2004, Detective Michael Lynes of the West Valley City, Utah, Police made a routine visit to the local Extended Stay America hotel.  Hotel staff, after participating in a police-sponsored neighborhood narcotics watch, recognized patterns indicative of criminal activity.  The staff reported excessive foot traffic between rooms 329 and 333.  Lynes learned that both rooms were registered to Travis Craven and Heather White, and after running those names through a Utah warrant database, found an existing felony forgery warrant for Craven.  In order to ascertain whether Craven was in either room 329 or 333, Lynes called for backup.

The officers knocked simultaneously on the doors of rooms 329 and 333, with Lynes taking room 333 while another officer, Detective Cheshire, knocked on the door of room 329.  Upon knocking, Cheshire heard movement in the room and identified himself as a police officer.  When a male voice inside the room asked the purpose of Cheshire's visit, Cheshire responded that he was serving a felony warrant on Craven.  The voice replied that Craven was in room 333.  Suspecting that the voice might be Craven, Cheshire persisted until a male individual, later found to be Rollins, opened the door.

Not knowing Rollins, Cheshire asked him for identification.  Having none, Rollins gave Cheshire a name and date of birth.  Cheshire checked that information against a Utah database and found that no such person existed.  After Rollins gave a second false name, Cheshire confronted Rollins with his false information and, without telling Rollins, decided that he had probable cause to arrest him for providing false information.

Cheshire continued his investigation and Rollins continued to mislead him as to his identity. Approximately thirty minutes later, Cheshire moved Rollins to a nearby bed, handcuffed him, and advised him he was under arrest for giving false information, a class B misdemeanor under Utah law.

Nearly ten minutes after being informed he was arrested, Rollins truthfully identified himself. This allowed Cheshire to search the warrants database where he found multiple outstanding warrants for Rollins, including some for narcotics crimes and one for violating felony parole. Detective Cheshire testified that this new information shifted the investigation from Craven's felony forgery warrant to Rollins' outstanding narcotics warrants and violation of parole. This also compounded the awareness and alertness of the officers. Another male detained in the room, J.D. Stevens, was also found to have an outstanding felony warrant.

Shortly thereafter, having found Craven in room 333, Detective Lynes returned to room 329 where Cheshire advised him of Rollins' identity, false information, and outstanding warrants. Upon learning of Rollins' and Stevens' warrants, Lynes determined that Rollins' arrest, previously for misdemeanor false informing, now included a fugitive felon arrest. At this point, a search incident to arrest was conducted. At the time, Stevens was seated in a chair next to the bed and Rollins sat on the bed. Both were handcuffed. Lynes found a backpack containing a firearm under the covers of the bed, approximately two feet from Rollins.

Rollins moved to suppress the evidence found in the bag, arguing that it was seized in violation of his Fourth Amendment rights. After extensive evidentiary hearings on the arrest and search, the district court denied Rollins' motion to suppress the firearm. The court held that because Rollins had no reason to believe he was under arrest until he was handcuffed, the arrest did not occur until approximately thirty-five minutes into the encounter. Up to that point, according to the district court, the seizure was an "investigative detention" under Terry v. Ohio, 392 U.S. 1 (1968). According to the district court, the search, which took place after Rollins identified himself and his warrants were revealed, occurred only ten to fifteen minutes after his arrest. And, since it was conducted in the immediate vicinity of Rollins, the court found the search valid because it was sufficiently contemporaneous as to both space and time.

## II.    DISCUSSION

When reviewing a district court's denial of a motion to suppress evidence, "'we review the district court's factual findings for clear error, its conclusions of law de novo, and view the evidence in the light most favorable to the prevailing party.'" United States v. White, 326 F.3d 1135, 1137 (10th Cir. 2003) (quoting United States v. Gallegos, 314 F.3d 456, 458 (10th Cir. 2002)). We thus review the district court's conclusions regarding the timing of the arrest and the breadth of the search de novo, viewing the supporting evidence in a light most favorable to the government.

A warrantless search violates the Fourth Amendment unless it falls within one of the enumerated exceptions to the warrant requirement. See, e.g., United States v.

-4-

Edwards, 242 F.3d 928, 937 (10th Cir. 2001).  These exceptions include, among others, warrantless searches incident to a lawful arrest.  Chimel v. California, 395 U.S. 752, 762-63 (1969).  A search incident to arrest allows a search not only of the arrestee, but also of the area within his "immediate control," meaning "the area from within which he might gain possession of a weapon or destructible evidence."  Id. at 763.

The inquiry into the propriety of a search incident to arrest is a dual one.  First, we ask whether the arrest was in fact lawful.  United States v. Anchondo, 156 F.3d 1043, 1045 (10th Cir. 1998).  Second, we examine whether the search was contemporaneous, both spatially in terms of areas within the defendant's "immediate control" and temporally in terms of the incidents rendering the arrest permissible.  Edwards, 242 F.3d at 937.  Rollins concedes the lawful nature of his arrest.  Rollins contests only the district court's assessment of the location and timing of the arrest as they relate to the time and space requirements of the search.

A.      Arrest Location

Rollins claims that his arrest took place within ten minutes after the inception of the interaction with Cheshire, while the two stood near the kitchenette in room 329.  Rollins argues that an arrest at this location makes a search of the bed, located in the same hotel room but several feet away, too far removed from his "grab" space and thus beyond the spatial scope of a valid search.

Assuming, arguendo, that Rollins' arrest actually occurred near the kitchenette, a circumstance with which we disagree, the search was still valid.  When police have

probable cause to arrest a defendant, as they uncontestedly did here, "a limited, warrantless search of a motel room incident to the lawful arrest of its occupants is permissible." United States v. Burns, 624 F.2d 95, 101 (10th Cir. 1980) (approving use of drug-detecting dog without warrant on entire room). The fact that Rollins was in one part of the room does not exclude other parts of the room from the search. Burns explicitly states that "[t]his principle applies where, as here, the arrest occurs at an entrance way." Id.

Rollins further claims he did not have "immediate control" over the area searched because he was handcuffed. However, the presence of handcuffs is not singularly determinative of the scope of the arrestee's "immediate control." Rather, a number of factors are considered, including the number of officers on the scene, the positioning of the officers and arrestees with regard to the area searched, and the likelihood of escape. United States v. Parra, 2 F.3d 1058, 1066 (10th Cir. 1993). We conduct this analysis remembering that "the fact that the detainee is under the control of officers does not eliminate the risk that he will gain access to a weapon." United States v. Dennison, 410 F.3d 1203, 1213 (10th Cir.) (quotations omitted) (upholding search incident to arrest when arrestee was handcuffed in an area different from the area searched), cert. denied, 126 S. Ct. 468 (2005).

When analyzing searches incident to arrest and the rationale of officer safety the test is "objective rather than subjective, and therefore the officer need not personally be in fear." Id. This court has noted that "'[c]ustodial arrests are often dangerous; the police

must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp.'" Parra, 2 F.3d at 1066 (alteration in original) (quoting United States v. Lyons, 706 F.2d 321, 330 (D.C. Cir. 1983)). For this reason, "accessibility, as a practical matter, is not the benchmark." United States v. Palumbo, 735 F.2d 1095, 1097 (8th Cir. 1984). Accordingly, Rollins' handcuffs do not invalidate the search.

**B.      Timing of the Arrest**

Having concluded that the entire room was within Rollins' "immediate control," we now examine the temporal restraints on a search incident to arrest. Edwards, 242 F.3d at 937. The proper analysis is not a minute-by-minute comparison of the "time of arrest" with the "time of search," but rather, "[t]he relevant distinction turns . . . upon whether the arrest and search are so separated in time or by intervening events that the latter cannot fairly be said to have been incident to the former." United States v. Abdul-Saboor, 85 F.3d 664, 668 (D.C. Cir. 1996).

We first determine the time of arrest. The district court held the interaction between Cheshire and Rollins was a Terry investigative detention until Cheshire actually handcuffed and arrested Rollins for providing false information. We think that the arrest may have occurred at a somewhat earlier time but the determination makes little difference in the outcome of this case.

An "investigative detention" is justified so long as it is supported at its inception by a reasonable suspicion of criminal activity and the extent of the detention is related in

scope to the circumstances giving rise to the interaction. See, e.g., Hiibel v. Sixth Judicial Dist. Court of Nevada, 542 U.S. 177, 185 (2004). This temporary detention allows an officer "in appropriate circumstances and in an appropriate manner [to] approach a person for purposes of investigating possibly criminal behavior" to determine whether probable cause for arrest exists. Terry, 392 U.S. at 22.

We agree with the district court that when Cheshire first spoke to Rollins in room 329, a Terry investigative detention began. Cheshire had a reasonable suspicion that Craven, wanted on a felony warrant, was in room 329 and detained Rollins to determine whether he was the wanted person. Cheshire was initially unable to ascertain whether Rollins was the wanted individual. However, after receiving two false names from Rollins, Cheshire developed probable cause to arrest Rollins for unlawfully providing false information. Without either handcuffing Rollins or telling him he was under arrest, Cheshire decided he would arrest Rollins and confronted him with his use of inaccurate names. Thus, probable cause for a misdemeanor arrest existed and the Terry detention came to an end.

This conclusion is, in effect, what Rollins asks for. From this position Rollins argues that a search of the bed, thirty-five minutes after this arrest, exceeds the temporal constraints on a search incident to arrest. However, as mentioned above, the analysis is not a "time of arrest" versus "time of search" analysis, but rather an examination of the entire interaction to determine whether the search was actually incident to an arrest. Abdul-Saboor, 85 F.3d at 668.

It is relevant that only a few months before the challenged search occurred, Rollins was arrested for another, more serious, offense. When Detective Lynes returned to room 329 and learned of Rollins' identity and outstanding felony warrants, he made the decision to enforce those warrants, adding a felony arrest to the previous misdemeanor arrest. The knowledge that the officers were dealing with a wanted fugitive as opposed to a misdemeanant, while not causing fear, did cause a heightened state of alert. Based on this new information, Lynes sensibly executed a search incident to arrest of the area surrounding Rollins.

Viewing the interaction as a "custodial arrest *process,*" id. (quotations omitted) (emphasis added), that began as a Terry encounter, evolved into a misdemeanor arrest, and ended eventually as a felony arrest with a search incident to arrest, the length of the "process" was of Rollins' own creation. Had Rollins not committed the misdemeanor of false informing and given his true identity when Detective Cheshire first approached room 329, a warrant check would have immediately occurred leading to Rollins' arrest. This would have been almost exactly the Burns' scenario, allowing a limited warrantless search of the motel room where Rollins was arrested. Rollins' criminal conduct in delaying the search for nearly an hour cannot be allowed to invalidate an otherwise valid search. Thus, we hold that this search was executed in a temporally contemporaneous manner, incident to a lawful arrest.

**III. CONCLUSION**

Although we place the time of arrest earlier in the interaction than the district court, the result remains the same.  We affirm the district court.

ENTERED FOR THE COURT

C. Arlen Beam
Circuit Judge