# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00742-CR

---

**Mark Jason Normand, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 433RD DISTRICT COURT OF COMAL COUNTY**
**NO. CR2021-418D, THE HONORABLE DANIEL H. MILLS, JUDGE PRESIDING**

---

### M E M O R A N D U M   O P I N I O N

Mark Jason Normand was charged with possessing between 4 and 200 grams of heroin. *See* Tex. Health & Safety Code §§ 481.102(2), .115(d). The indictment also alleged that Normand had previously been convicted of the felony offense of theft. *See* Tex. Penal Code §§ 12.42, 31.03. Normand filed a motion to suppress evidence seized in the case, and the trial court denied the motion following a hearing. After the hearing, Normand pleaded guilty to the charged offense and pleaded true to the enhancement allegation. Following a punishment hearing, the trial court sentenced Normand to twenty years' imprisonment. In one issue on appeal, Normand asserts that the trial court erred by denying his suppression motion. We will affirm the trial court's judgment of conviction.

## BACKGROUND

On October 14, 2019, at approximately 9:00 p.m., the police initiated a traffic stop of a silver Lexus being driven by Normand. Kimberly Gonzales was a passenger in the vehicle. During a search of Normand's person, the police discovered in his pocket a clear container with a crystalline substance inside and an Altoids tin with a dark substance inside. Subsequent testing revealed that the crystalline substance was .31 grams of methamphetamine and that the dark substance was 6.37 grams of heroin. Normand was arrested after the search, and he was charged with possessing between 4 and 200 grams of heroin. After being charged, he filed a motion to suppress the evidence obtained during the traffic stop, arguing that his detention, the search performed by the police, and his arrest were all illegal. During the suppression hearing, no witnesses were called, but the trial court admitted without objection probable-cause affidavits, incident reports, and other documents prepared by the officers involved in the traffic stop as well as recordings of 911 calls made before the traffic stop and footage from the officers' body cameras and the cameras inside their police cars. Officer J. Meier responded to the 911 call and initiated the traffic stop. A few minutes later, Officers Michael Kuhl and Jerry Airola arrived on the scene together. The final officer to arrive was Officer R. Chandler.

As chronicled on the 911 calls, an employee of a liquor store in New Braunfels, Texas, called 911 to report that a blonde woman slammed liquor bottles on the countertop of the store before leaving the store and the area. The employee told the dispatcher that the woman had ridden to the store in a silver Lexus and that it was still in the parking lot. The employee called back later to relate that the woman had returned to the parking lot and gotten into the car. According to the admitted documentation, Officer Meier responded to the call and saw the Lexus

2

driving out of the parking lot. Officer Meier followed the car and initiated a traffic stop after he observed the vehicle fail to stop behind the white line at an intersection.

The camera footage did not show the initial traffic violation, but it captured Officer Meier activating his emergency lights and captured the Lexus pulling over a few seconds later. Officer Meier approached the Lexus from the passenger side. Officer Meier explained to the occupants that there had been a 911 call from an employee at a liquor store, and Normand told the officer that they did not buy anything from that store, that he ran out of gas in the liquor store's parking lot, and that he went to a nearby gas station to buy gas. Normand told Officer Meier that the officer could perform a breathalyzer on him and could search the car for alcohol. Officer Meier asked if Normand and Gonzales had their driver's licenses, and Normand admitted that he did not currently have a valid license. Normand did hand the officer a State identification card. Gonzales handed her driver's license to Officer Meier. Normand explained that he was driving Gonzales to her home in San Antonio.

During this exchange, Officer Meier asked Gonzales to step out of the car with her purse and told her that he saw a syringe in her purse while she was getting her license. Officer Meier asked Gonzales if she was injecting methamphetamines, but she denied it. Officer Meier then asked her if she was injecting heroin, and she responded "yes, but I am on methadone now." Gonzales admitted to the officer that there were used heroin needles in her backpack in the car but asserted that there should not be any drugs in the car, in her purse, or on her person. Gonzales then said that she had not used heroin in years and did not currently have any. However, she also stated that she had only recently started taking Methadone and that practitioners do not recommend stopping heroin use entirely until the Methadone dosing has stabilized. Gonzales told Officer Meier that Normand did not use drugs.

3

Around that time, Officers Airola and Kuhl arrived and approached Officer Meier and Gonzales. Officer Meier told Officer Airola that Normand was "fine" and "not intoxicated" but that Gonzales had admitted to using drugs and had a needle in her purse. Officer Meier told Officers Airola and Kuhl that they could take over the case and handed Gonzales's and Normand's identification cards to Officer Airola. Officer Meier told Gonzales that Officers Airola and Kuhl would take over and make sure Normand and she were "on the up and up." Officer Meier went to talk with another officer who arrived and stayed on the scene briefly and told the officer that he did not smell any alcohol in the car. While Officer Kuhl was talking with Gonzales, Gonzales admitted that she had used heroin the day before.

Officer Meier returned to Normand's car, talked with Normand about how he knew Gonzales, and informed Normand that there were concerns about Gonzales's having drugs. While Officer Meier was talking with Normand, Officer Airola approached the driver's door and mentioned that Normand did not have a license. Normand admitted that he drove without a valid driver's license. Officer Meier scanned Normand's identification card and registration before telling Normand that he initiated the traffic stop because Normand failed to stop behind the white line at an intersection but that he had decided to give Normand a warning for that offense.

During this exchange, Officer Airola asked Normand to step out of the vehicle. Normand agreed and denied having any weapons or drugs on him. Normand agreed to walk to the back of the car. Officer Airola asked Officer Kuhl to perform a probable-cause search on Normand. Officer Meier explained to Normand that the police had probable cause to search the vehicle, Gonzales, and him because of the drug paraphernalia. Officer Airola told Officer Kuhl that they would wait for a female officer to search Gonzales.

4

At the start of the search of Normand, Normand told the officers that he was not sure if they would find something illegal during the search and then stated that there was "something" "in a little container" in his pocket. More specifically, Normand stated that the container had powder in it that was likely methamphetamine and explained that he grabbed it when the police pulled him over because he did not want the officers to see it. During the search, Officer Kuhl asked if it was ok to search Normand's pockets, and Officer Airola said that it was because the search was a probable-cause search due to Gonzales's having a heroin needle. Officer Kuhl discovered a container with powder in it, an Altoids container, and a switchblade. During the search, the officer also recovered from Normand's pants several other items, including a pack of cigarettes, a candle, a cat toy, a pill bottle, a lighter, a bag of candy, a key fob, and a wallet. Officer Airola directed Officer Kuhl to finish searching Normand before examining the contents of the objects collected. The search of Normand lasted approximately five minutes. The officers asked Normand to sit on a sidewalk while they went through the items collected, and he sat on the sidewalk and smoked a cigarette. Officer Kuhl opened the Altoids container and found what Officer Airola stated was likely "quite a bit" of "black tar heroin." During the search, Officer Chandler arrived and began searching Gonzales.

Approximately seven minutes after the police directed Normand to sit on the sidewalk, the police interrupted their search of the items collected from Normand and handcuffed him, read him his *Miranda* and statutory warnings, and placed him in the back of a police car. Once Officer Chandler finished searching Gonzales, the officers arrested Gonzales and placed her in the back of another police car. Then the police searched Normand's car, arranged for it to be towed off, and drove Normand and Gonzales to jail.

5

At the suppression hearing, Normand stated that he was not challenging the legality of the initial traffic stop. However, Normand argued that the police impermissibly delayed Normand's detention and did not have a sufficient basis to authorize a search of his person. After considering the evidence and arguments by the parties, the trial court denied Normand's suppression motion and concluded that the search of Normand was permissible as a search incident to arrest, a probable-cause search, and a weapons frisk. Following its ruling, the trial court issued the following relevant findings of fact and conclusions of law:

**Findings of Fact**

1. The evidence supporting the denial of the motion to suppress . . . was competent and credible.

. . . .

8. After observing [a] traffic offense, Meier properly initiated a traffic stop of Defendant's vehicle.

. . . .

14. Meier soon asked both parties for their IDs, and the driver—Defendant—produced only a Texas identification car[d], "explaining why he [was] unlicensed."

. . . .

26. Officer Meier handed off the investigation to Airola, giving Airola Defendant's and the passenger's identification cards[.]

. . . .

28. Officer Meier said he was going to give Defendant a warning *for the "failure to stop" infraction related to the stop sign*; however, Meier *did not* give Defendant a "warning" for the driving-without-a-license offense.

29. Officer Airola mentioned the fact that Defendant did not have a license, and asked Defendant to step out of the car.

. . . .

6

32. . . . Defendant claimed he did not have any weapons or anything illegal on his person . . . .

. . . .

34. Officers told Defendant that Officer Kuhl was going to conduct a probable cause search of Defendant's person.

. . .

41. During the search, Defendant apparently indicated that he had "powder" methamphetamine, though he apparently tried to claim he did not know where it came from.

42. In Defendant's front left pocket, officers also discovered a large clear vial . . . [with] a clear crystalline substance which Officer Airol recognized to be methamphetamine . . . and Defendant apparently acknowledged it was meth . . . .

43. Officers also located a small Altoids container in Defendant's front left pocket[.]

. . . .

45. Officers then opened the Altoids container and found that it contained a hard black substance—which Officer Airola recognized to be "a large amount of black tar heroin . . . ."

. . . .

49. [Defendant and the passenger were] read their statutory warnings . . . .

. . . .

58. Defendant and the passenger were arrested and transported to the jail.

. . . .

**Conclusions of Law**

. . . .

34. Soon after Defendant was stopped for a traffic violation, and during the reasonable investigation of his traffic offense and other suspicious behavior, law enforcement developed reasonable suspicion and probable cause regarding Defendant's driving-without-a-license offense.

35. Defendant's driving-without-a-license offense committed in law enforcement's presence and view provided an objective justification for a search incident to

arrest, and provides one basis for rejecting his motion to suppress.

. . . .

38. Additionally, when considering the combined and cumulative force of the information known to officers—and reasonable inferences from that information—an objectively reasonable officer with such information has far more than what is necessary to constitute reasonable suspicion and probable cause, and the officers' action in Defendant's case were reasonable, lawful, and justified under the totality of the circumstances; accordingly, Defendant's motion to suppress was properly denied.

Normand challenges the trial court's ruling denying his motion to suppress.

## STANDARD OF REVIEW

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply a bifurcated standard, *Martin v. State*, 620 S.W.3d 749, 759 (Tex. Crim. App. 2021), in which they give almost total deference to the trial court's findings of fact and review de novo the application of the law to the facts, *State v. Ruiz*, 577 S.W.3d 543, 545 (Tex. Crim. App. 2019). That same deferential standard applies to the trial court's determination of historical facts, even if that determination is based on a video recording admitted into evidence at a suppression hearing. *State v. Duran*, 396 S.W.3d 563, 570 (Tex. Crim. App. 2013); *see State v. Garcia*, 569 S.W.3d 142, 149 (Tex. Crim. App. 2018) (noting that on matters of historical fact, trial judge is in better position than appellate court to settle disputes). However, appellate courts

8

review de novo "'indisputable evidence' contained in a videotape." *Duran*, 396 S.W.3d at 570 (quoting *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000)). In addition, a trial court's ruling on the motion will be upheld if it is correct under any theory of law applicable to the case regardless of whether the trial court based its ruling on that theory, but "a trial court's ruling will not be reversed based on a legal theory that the complaining party did not present to it." *Story*, 445 S.W.3d at 732.

## DISCUSSION

In his issue on appeal, Normand does not challenge the propriety of the initial traffic detention or the delay before the search of his person and instead contends that the trial court erred by denying his suppression motion because none of the three exceptions to a warrantless search forming the bases for the trial court's ruling—a probable-cause search, a weapons frisk, or a search incident to arrest—justified the warrantless search of him performed in this case. Accordingly, Normand argues that the evidence pertaining to the items seized from his pocket should have been suppressed under the Fourth Amendment. *See* U.S. Const. amend. IV.[1] Because we ultimately conclude that the trial court did not abuse its discretion by

---

[1] On appeal, Normand suggests that article I of section 9 of the Texas Constitution can provide greater protection than the Fourth Amendment federal counterpart. U.S. Const. amend. IV; Tex. Const., art. I, § 9. However, Normand did not present this argument during the suppression hearing or in his suppression motion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (explaining that trial court's suppression ruling will not be reversed on ground not made to trial court). Moreover, although the cases cited by Normand explain that the Texas Constitution *can* provide protection beyond that required by the Fourth Amendment, *see Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); *Morgan v. State*, 906 S.W.2d 620, 630 (Tex. App.—Fort Worth 1995, pet. ref'd) (Lattimore, J., dissenting), neither states that the Texas Constitution provides additional protection in the circumstances present here. Further, as our sister court has explained, searches incident to arrest are "not subject to more stringent restrictions under the Texas Constitution than under the Fourth Amendment." *See State v. Oages*, 227 S.W.3d 397, 400-01 (Tex. App.—Eastland 2007, pet. ref'd). Accordingly, we analyze this

determining that the search-incident-to-arrest exception applied and authorized the search in question, we need not address the other grounds challenged by Normand. *See Story*, 445 S.W.3d at 732; *see also Williams v. State*, 726 S.W.2d 99, 100 (Tex. Crim. App. 1986) (explaining that court did not have to address alternative grounds serving as basis for search after determining "that the search of the sack was a search incident to a lawful custodial arrest").

**Search Incident to Arrest**

Reasonableness is the touchstone of the Fourth Amendment, and the reasonableness of a search or seizure "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Under the Fourth Amendment, "a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well established exceptions." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (citation omitted). "When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant." *Marcopoulos v. State*, 548 S.W.3d 697, 703 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

One such exception is if the offense is committed in the presence of or within the view of a peace officer. *See* Tex. Code Crim. Proc. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view"). "[A] warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause." *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and

issue under the Fourth Amendment only. *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010).

circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.*

The test for probable cause is objective; it is "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.*; *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (explaining that "[t]he subjective intent or motivations of law enforcement officials is not taken into account when considering the totality of the circumstances"); *see also Scott v. State*, 572 S.W.3d 755, 762 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (explaining that officer's subjective reason for arrest has no relevance to probable-cause determination and that determination instead focuses on objective assessment of facts known to police officers). Probable cause requires more than mere suspicion, but it requires far less evidence than is needed to support a conviction or even to support a finding by a preponderance of the evidence. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). "Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Smith v. State*, 58 S.W.3d 784, 792 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

If a person commits an arrestable traffic offense, he is subject to a search incident to arrest, even if the decision to arrest him is made after the search is conducted. *See State v. Ballard*, 987 S.W.2d 889, 892-93 (Tex. Crim. App. 1999); *Hart v. State*, 235 S.W.3d 858, 862-63 (Tex. App.—Eastland 2007, pet. dism'd). A search incident to an arrest is one of the

11

exceptions to the warrant requirement for searches. *State v. Drury*, 560 S.W.3d 752, 755 (Tex. App.—Fort Worth 2018, pet. ref'd); *see also id.* (explaining that no warrant is required if search is limited to search of person or objects "immediately associated" with person or area within person's immediate control). There are two justifications for a search incident to arrest: "(1) the need for officers to seize weapons or other things which might be used to assault [a]n officer or effect an escape, and (2) the need to prevent the loss or destruction of evidence." *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014). To justify the warrantless search, the search incident to arrest cannot be remote in time or place from the arrest. *Id.* Given the purposes of the exception, the search allows "a relatively extensive exploration of the person," *Terry v. Ohio*, 392 U.S. 1, 25 (1968), and his "personal effects," *Dew v. State*, 214 S.W.3d 459, 462 (Tex. App.—Eastland 2005, no pet.). Moreover, provided that the officer has probable cause to arrest, the search incident to arrest can occur before a formal arrest. *State v. Sanchez*, 538 S.W.3d 545, 550 (Tex. Crim. App. 2017); *see also Meiburg v. State*, 473 S.W.3d 917, 924 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (noting that it was irrelevant that defendant was not arrested until after search "because the law requires only that [the police officer] had probable cause to believe that he had committed a crime") (citation omitted).

In his first set of arguments, Normand highlights that no witnesses testified at the suppression hearing and contends that the trial court improperly relied on the officers' reports and recordings without any accompanying witness testimony that could have provided an evidentiary basis upon which to make a suppression ruling. Normand argues that when no witnesses testify, appellate courts are improperly forced into the fact-finding role but without the ability to assess credibility and demeanor and must speculate about those issues.

12

Accordingly, Normand contends that the trial court's ruling on the motion without witness testimony was improper.

In this case, the trial court admitted into evidence footage from the officers' body cameras and from cameras in their patrol cars and the reports and probable-cause affidavits prepared by them. When the exhibits were offered, Normand communicated that he had "no objection" to the admission of any of the exhibits. Although Normand did argue at the hearing that the search was improper, he did not assert that the trial court could not make its suppression ruling in the absence of testimony from any witnesses.

To preserve a complaint for appellate review, a party must present to the trial court a timely request, motion, or objection with sufficient specificity as to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. *See* Tex. R. App. P. 33.1. Error preservation is a systemic requirement, and appellate courts should not review a claim that has not been preserved for appellate review. *See Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Accordingly, Normand failed to preserve his complaint regarding the absence of any witnesses at the suppression hearing. *See* Tex. R. App. P. 33.1.

When presenting this set of arguments, Normand contends that these arguments may properly be addressed on appeal under the circumstances of this case. Although Normand acknowledges that the Court of Criminal Appeals upheld a suppression ruling based on unsworn police reports, he notes that in that case the Court emphasized that the defendant did not argue that the "offense report was, in any way, unauthentic, unreliable, or lacking in credibility" and instead argued that it could not be considered "without the shepherding wings of a sponsoring witness or affidavit." *Ford*, 305 S.W.3d at 540, 541. Further, the Court mentioned that had the defendant "complained about the reliability, accuracy, or sufficiency of the information

13

supporting the trial judge's ultimate ruling on the motion to suppress, this would be a very different case." *Id.* at 540; *see id.* at 540 n.40 (noting that defendant did not argue in suppression hearing or on appeal that officer did not have probable cause to search). After highlighting these portions of *Ford*, Normand urges that he argued at the suppression hearing and argues on appeal that the evidence was insufficient to meet the State's burden of establishing that the warrantless search was reasonable and justified under an exception to the warrant requirement. Moreover, Normand points to portions of the reports admitted into evidence that he contends were contrary to the trial court's ultimate conclusion and established, according to him, "the need for witness testimony for the State to meet its burden." Accordingly, Normand contends that he may challenge the lack of witness testimony here.

We do not read the language Normand highlights from *Ford* as excusing the requirement for an objection or motion as a prerequisite for preserving a complaint for appellate consideration. *See* Tex. R. App. P. 33.1. Instead, the highlighted language seems to support the contention that the non-testimony evidence can be challenged in the trial court and on appeal when preserved as being insufficient to establish a justification for a search or seizure, *see Ford*, 305 S.W.3d at 540-41; *see also State v. Opare*, 583 S.W.3d 685, 692-93 (Tex. App.—Fort Worth 2018, no pet.) (affirming granting of motion to suppress in part because defendant objected to lack of authentication), and Normand does present those types of challenges in the remainder of his arguments on appeal. However, we do not believe that *Ford* stands for the proposition that a defendant may argue for the first time on appeal that the suppression ruling could not be made absent witness testimony. *Cf. Adams v. State*, 132 S.W.3d 701, 702 (Tex. App.—Amarillo 2004, no pet.) (concluding that defendant did not preserve complaint that trial court erred by ruling on motion to suppress without evidentiary hearing because defendant did not raise issue below).

14

Even if Normand were correct that this type of claim can be presented on appeal without being preserved below, we would be unable to sustain this issue. The Code of Criminal Procedure does not require that witnesses testify before a ruling on a motion to suppress may be made. *See* Tex. Code Crim. Proc. art. 28.01, § 1(6) (listing testimony as one possible type of information trial court can consider in its discretion during suppression hearing). The Court of Criminal Appeals has explained that the Code does not provide an exhaustive list of the types of information a trial court may rely on when making a suppression ruling and that trial courts may exercise their discretion "in deciding what type of information" to consider in making suppression rulings. *Ford*, 305 S.W.3d at 539. This Court has explained that trial courts can rule on a motion to suppress based on the merits of the motion without any witnesses being called and that appellate courts "may not treat the absence of testimony as being determinative on appeal." *State v. Miller*, 116 S.W.3d 912, 915 (Tex. App.—Austin 2003, no pet.).

Additionally, "[e]vidence" means "[s]omething (including testimony, documents, and tangible objects) that tends to prove or disprove the existence of an alleged fact." *Evidence, Black's Law Dictionary* 457 (7th ed. abridged 2000). Evidence tends to prove or disprove a fact if it has any tendency to make that fact more or less probable than it would be without the evidence. *See* Tex. R. Evid. 401. Evidence of the facts and circumstances surrounding an arrest may be presented through a non-testifying officer's unsworn offense report and may serve as the factual basis for a trial court's ruling. *See Ford*, 305 S.W.3d at 539. Similarly, appellate courts may properly defer to inferences that trial courts draw from recordings. *See Duran*, 396 S.W.3d at 570-71.

In this case, not only did the trial court have unsworn reports and probable-cause affidavits regarding the search and investigation, it also had video recordings of the traffic stop,

15

the search, the arrest, and all the interactions between the police officers and the occupants of the vehicle. *See id.* at 570. Further, the trial court specifically found the admitted exhibits to be "competent and credible." *See Ruiz*, 577 S.W.3d at 545. On this record, we would be unable to determine that the trial court abused its discretion by relying on the State's exhibits without any accompanying testimony when making its suppression ruling. *See Ford*, 305 S.W.3d at 541 (explaining that trial court does not abuse its discretion by considering and relying on documentary filings that it finds credible and reliable "in the absence of any objection to its specific content").

In his next set of arguments, Normand asserts that the warrantless search could not be justified as a search incident to arrest. As support, Normand highlights that Officer Meier stated that he was going to give Normand a warning rather than a ticket. Based on this statement, Normand argues that it was "clear that the officers did not plan to arrest him for his traffic offenses" and avowed not to and that they, therefore, could not later perform a search incident to arrest. Specifically, he contends that "a search incident to arrest cannot be reasonably conducted when a defendant has already been told he would be issued a warning for his . . . traffic violations." Further, Normand emphasizes that he was ultimately arrested for possession of illegal drugs and not driving without a valid license.

As an initial matter, we note that Normand's characterization of the exchange between Officer Meier and Normand is inconsistent with the trial court's findings. The trial court found that Officer Meier informed Normand that he was going to give Normand a warning for the failure-to-stop offense and that he did not make a similar statement regarding Normand's driving without a valid license. That finding is consistent with the recordings from the officers' body cameras, and we are obligated to defer to that finding. *Ruiz*, 577 S.W.3d at 545; *Duran*,

16

396 S.W.3d at 570. Accordingly, even if, as suggested by Normand, the statement by Officer Meier could have had some type of preclusive effect, the effect would not have extended to Normand's driving without a valid license. *Cf. Powell v. State*, 5 S.W.3d 369, 379 (Tex. App.—Texarkana 1999, pet. ref'd) (concluding that officer's continued detention after warning issued was not improper fishing expedition because it was based on officer's reasonable suspicion developed *before* warning was issued).

Moreover, in this case, the police initiated a traffic offense after noticing Normand's failure to stop behind the white line at an intersection. *See* Tex. Transp. Code § 544.010 (requiring driver to "stop at a clearly marked stop line"); *see also id.* § 542.301 (explaining that person commits offense if he performs act or fails to perform act required by subtitle). Within a few minutes of the traffic stop being initiated, Normand admitted that he did not have a valid driver's license and had been driving without a license, and Officer Meier had observed Normand driving before Normand made that admission. Under the Transportation Code, an individual commits an offense if he drives without a valid driver's license and if he does not have a license in his possession while driving. *See id.* §§ 521.021, .025; *see also id.* § 521.461 (explaining that individual who violates provision of Transportation Code commits offense).

Accordingly, Officer Meier had probable cause to arrest Normand and, therefore, to search him incident to arrest. *See* Tex. Code Crim. Proc. art. 14.01(b) (allowing police officer to arrest someone after observing individual commit crime). The fact that the search occurred before the arrest did not render the exception inapplicable. *See Dew*, 214 S.W.3d at 462 (explaining that officer has probable cause to arrest and may search individual incident to arrest if he observes defendant driving without driver's license and that whether arrest occurs before or

17

after search is irrelevant provided that there was probable cause). Moreover, probable cause was imputed to the other officers involved in the investigation, including Officers Airola and Kuhl who were involved in the search of Normand, and Normand admitted to Officer Airola that he had been driving without a valid license. *See Smith*, 58 S.W.3d at 792 n.10. Although Officer Airola communicated at the scene that the search was a probable-cause search authorized after the discovery of drug paraphernalia in Gonzales's purse, the test for probable cause is unrelated to the subjective beliefs of the officers and is based on an objective consideration of the totality of the circumstances. *See Amador*, 275 S.W.3d at 878; *see also Scott*, 572 S.W.3d at 762 (noting that if officer had information sufficient "to warrant a prudent person in believing that the person arrested had committed or was committing a traffic violation for which a person properly may be arrested, a court is to deem the arrest valid and legal, even if the officer subjectively believed the arrest was made for another offense"). Similarly, the applicability of the exception is not altered by the fact that Normand was ultimately arrested for and charged with possession of illegal drugs because an officer may arrest an individual for an offense discovered during the investigation of another offense. *See Moreno v. State*, 124 S.W.3d 339, 348 (Tex. App.—Corpus Christi-Edinburg 2003, no pet.); *see also Raldolph v. State*, 152 S.W.3d 764, 771 (Tex. App.—Dallas 2004, no pet.) ("An objective standard is applied to determine the validity of the first arrest which leads to another arrest").[2]

---

[2] The cases that Normand relies on in this set of arguments are distinguishable from the circumstances present in this case. In *Linnett v. State*, a police officer initiated a traffic stop to write Linnett a traffic ticket for having an expired license plate and asked Linnett to get out of the car while the officer wrote the ticket. 647 S.W.2d 672, 673 (Tex. Crim. App. 1983). The officer noticed that one of the windows on the car was down and reached in and retrieved a bag from the front seat that contained illegal drugs inside. *Id.* The Court reversed the defendant's conviction after determining that he was not under a custodial arrest at the time of the seizure of the property from inside the car. *Id.* at 675. In *Thomas v. State*, the police initiated a traffic stop of the defendant after he turned the wrong way, and he did not have a driver's license.

In his third set of arguments, Normand contends that even if the search-incident-to-arrest exception could have applied in this case due to his driving without a license, the requirements for that exception were not met. When making this claim, Normand highlights language from cases addressing the exception explaining that it applied when the search and arrest occurred "in rapid succession" and were separated "by a few moments," *Williams*, 726 S.W.2d at 101 & n.1, that it does not matter whether the search preceded the arrest "[w]here the formal arrest followed quickly on the heels of the challenged search," *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), and that "it is irrelevant that the arrest occurs immediately before or after the search," *Ballard*, 987 S.W.2d at 892. In light of the temporal language above, Normand contends that the exception could not apply here because "for 10 minutes after the presumed narcotics were found, [he] was not placed in handcuffs, was permitted to sit on the sidewalk, and was allowed to smoke a cigarette, prior to being handcuffed and placed in the back of a patrol vehicle."[3]

---

572 S.W.2d 507, 508 (Tex. Crim. App. 1976). The police officers moved the defendant to the back of a patrol car and detained him while the police began the process of writing him a ticket. *Id.* at 508, 509. During that detention, the police proceeded to search through his car before discovering illegal drugs inside the car. *Id.* at 508. The Court concluded that the officers had no probable cause to justify the search of the vehicle and that the search was not done incident to arrest because the officer testified that Thomas was being detained while a traffic ticket was being written but was not arrested until after the drugs were found. *Id.* at 509. The Court reasoned that Thomas was not in custody at the time of the search and that, therefore, the search was not incident to arrest for the traffic violation. *Id.* Here, the allegedly improper search was of Normand's person, not his car, and Normand was not being detained for the purpose of writing a traffic citation. Moreover, in a subsequent case in which an individual was searched after the police observed an offense and before he was arrested, like the case here, the Court of Criminal Appeals upheld the search as one incident to arrest and distinguished *Linnett* and *Thomas* on the ground that they involved searches conducted during a detention for the purpose of writing a traffic ticket, which was an alternative to a custodial arrest. *Williams v. State*, 726 S.W.2d 99, 101 n.1 (Tex. Crim. App. 1986).

[3] In its brief, the State asserts that Normand did not argue at the suppression hearing that the search incident to arrest could not apply because Officer Meier told Normand that he would

19

The search of Normand's person lasted approximately five minutes, and during the search Officer Airola instructed Officer Kuhl not to open and go through each item removed from Normand's pocket but to wait until after all the items have been removed. *See Price v. State*, 662 S.W.3d 428, 433 (Tex. Crim. App. 2020) (plurality op.) (explaining that "[s]earches of the person . . . are always justified under the search incident to arrest exception to the warrant requirement, upon no more justification than the arrest itself"). After all items were removed from Normand's pocket, the officers did instruct Normand to sit on a sidewalk and allowed him to smoke a cigarette. During the next seven minutes before Normand was formally arrested, the police did not seize any new items but did not move on from the investigation and instead focused on going through the items previously collected from Normand, including the Altoids tin and a canister that the officers believed contained methamphetamine. Upon opening the Altoids tin and finding what the officers believed to be heroin, the officers obtained bags to store the items and formally arrested Normand.

When presenting this set of arguments, Normand attempts to distinguish the search of his person from the search of the items collected from his pocket and in light of that distinction argues that the timing requirement could not be met. However, "the proper analysis is not a minute-by-minute comparison of the 'time of arrest' with the 'time of search,' but rather,

issue a warning for the traffic violations and because the arrest did not occur immediately after the search. Accordingly, the State asserts that Normand cannot present those arguments on appeal. *See Hailey v. State*, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) (explaining that appellate court may not reverse trial court's decision on legal theory not presented to trial court by complaining party). However, in his closing argument, Normand did emphasize that he admitted to driving without a valid driver's license, that Officer Meier had told Normand that he was going to give Normand a warning, that the police did not arrest Normand before searching him, that the police later indicated that they were searching him due to the drug paraphernalia found in Gonzales's purse, and that the police did not discuss a need to search for the safety of the officers. In light of these arguments, we cannot agree that Normand is seeking to reverse the trial court's ruling on a ground not made to the trial court.

'[t]he relevant distinction turns . . . upon whether the arrest and search are so separated in time or by intervening events that the latter cannot fairly be said to have been incident to the former.'" *United States v. Rollins*, 190 F. App'x 739, 745 (10th Cir. 2006) (quoting *United States v. Abdul–Saboor*, 85 F.3d 664, 668 (D.C. Cir. 1996)). The decision by the police to divide the search up did not render Normand's search so separated from his arrest that the search could not have qualified as one incident to arrest.

Even if the time between when Normand was directed to sit on the sidewalk and his arrest was excluded from the time of the search, appellate courts have determined that gaps like the one at issue here did not prohibit the searches from qualifying as searches incident to arrest. *See United States v. Clark*, 647 F. App'x 419, 423 & n.7 (5th Cir. 2016) (per curiam) (holding that search of defendant's car, which took place 15 to 30 minutes after his arrest on suspicion of selling heroin, was valid search incident to arrest); *Rollins*, 190 F. App'x at 745 (reasoning that search thirty-five minutes after arrest was permissible under circumstances); *United States v. Fisher*, 50 F. App'x 947, 949 (10th Cir. 2002) (determining that search of vehicle within four to five minutes of arrest was search incident to arrest); *Ramos v. State*, No. 05-97-02048-CR, 1999 WL 173992, at *2 (Tex. App.—Dallas Mar. 31, 1999, no pet.) (op., not designated for publication) ("once the officer had the authority to arrest appellant, it was of no consequence that the search took place several minutes before the formal arrest occurred"). Accordingly, we cannot conclude that the trial court abused its discretion by determining that the temporal requirement of the search-incident-to-arrest exception had been satisfied.

In his final set of arguments in this issue, Normand contends that the search was not done to effectuate the justifications for a search incident to arrest: (1) the need to seize weapons or other things that could have been used to assault an officer or effect an escape, or

21

(2) the need to prevent the loss or destruction of evidence. *See Granville*, 423 S.W.3d at 410. Building on his assertion that the search was untethered from those justifications, he urges that the search was unreasonable and did not fall within the warrantless exception. As support, Normand again asserts that the officers stated that they were not going to arrest him and suggests that without a planned arrest, the justifications could not have applied to justify the search. In other words, he argues that the officers could not have been concerned about the destruction of evidence relating to a traffic offense for which they were not going to issue him a citation or arrest him. Additionally, he asserts that no evidence pertaining to the offense of driving without a valid license could have been found on his person and that there could have been no assault or escape during an arrest because there was not going to be any arrest. In fact, Normand contends that the officers could not have been worried about an escape or assault because they allowed him to sit on a sidewalk after the search.

As in the earlier set of arguments, Normand's claim that the officers communicated an intention not to pursue any traffic violation is inconsistent with the trial court's findings that Officer Meier did not tell Normand that he was going to give Normand a warning for driving without a valid license. On the recordings, no officer told Normand that he would not be arrested for driving without a license. Before the search, Officer Meier handed over the investigation to Officer Airola. Moreover, as discussed above, the officers had probable cause to arrest Normand for the license offense, and Normand admitted to Officer Airola that he had been driving without a valid license.

Additionally, even if Normand is correct that a search of Normand was unlikely to produce evidence pertaining to the offense of driving without a license, that would not have prevented the officers from performing a search incident to an arrest for the license violation.

22

As Normand emphasizes in his briefing, a search incident to arrest can also be justified on the need for police to obtain weapons that could be used to assault an officer or help the defendant escape. *See id.*; *see also United States v. Robinson*, 414 U.S. 218, 234-35 (1973) (noting that police officer had probable cause to arrest defendant for driving without license and discovered during search cigarette packet with illegal drugs inside, explaining that Court was unwilling "to qualify the breadth of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to possess dangerous weapons than are those arrested for other crimes," reasoning that reviewing courts should not "later decide" what "was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect," and concluding that full search of defendant was reasonable and that officer was authorized to seize evidence from cigarette packet).

That concern was justified as Normand failed to disclose the switchblade knife that the police found in his pocket. Moreover, the search incident to arrest revealed Normand's possession of illegal drugs that also gave the officers probable cause to arrest Normand. *Cf. Sanchez*, 538 S.W.3d at 551 (explaining that search incident to arrest can be justified by discovery of different offense). It was only after the police ensured that no additional weapons were located on Normand's person and after discovering and securing illegal drugs from his pockets that the officers allowed Normand to sit on the sidewalk. Therefore, we cannot agree that the trial court abused its discretion by concluding that the search at issue comported with the justifications for a search incident to arrest. *See Granville*, 423 S.W.3d at 410.

For these reasons, we overrule Normand's issue on appeal.

## CONCLUSION

Having overruled Normand's issue on appeal, we affirm the trial court's judgment of conviction.

_____
Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed:   May 1, 2025

Do Not Publish