

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-17-00273-CR

———————————————————

THE STATE OF TEXAS

V.

DANIEL DEWAIN DRURY, Appellee

---

On Appeal from the 30th District Court
Wichita County, Texas
Trial Court No. 58190-A

---

Before Meier, Gabriel, and Kerr, JJ.
Opinion by Justice Meier

## OPINION

## I. INTRODUCTION

In this appeal from the trial court's order sustaining Appellee Daniel Dewain Drury's motion to suppress, we consider (1) whether an object searched by police was "immediately associated" with Drury and (2) whether police were capable of conducting a valid search incident to arrest when the search was justified by neither officer safety nor evidence preservation. We conclude that the object was immediately associated with Drury and that no additional justification beyond the lawful arrest was necessary to justify the search. We will reverse and remand.

## II. BACKGROUND

Early in the morning on June 15, 2016, Officer Christina Flores was dispatched to a residence in Wichita Falls to execute a felony capias warrant for Drury.[1] After two other police officers arrived (Officers Skates and Carter), the officers approached the residence and observed a female sitting in a vehicle parked in the driveway. The person identified herself as Lori Drury, stated that she lived at the residence, confirmed that Drury was home, and agreed to permit the officers to speak to him. Lori unlocked the front door and led the officers inside. The officers did not have a warrant to search the residence.

---

[1]The capias stated that the trial court had forfeited Drury's bond for failing to appear for trial.

When Officer Flores asked about Drury, Lori walked Officers Flores and Skates down a hallway and to a bedroom but said that Drury was not home. Officer Flores asked Lori for permission to look in the bedroom, and Lori agreed and stepped aside. Officer Flores entered the bedroom, opened a sliding closet door, and discovered Drury standing inside holding a small blue tin can in his right hand.[2] Officer Flores ordered Drury to exit the neatly organized closet and to turn around. Drury complied, and as Officer Flores placed handcuffs on him, she noticed that he was no longer holding the tin can. Officer Flores then looked in the closet and saw the tin can on the floor. After checking Drury for weapons (he had none), Officer Flores picked up the tin can, opened it, and saw wrapped tinfoil and a yellow pill that had been cut in half inside. Officer Flores closed the tin can, escorted Drury outside, and put him in a patrol car.[3] Officer Flores then opened the tin can again and found methamphetamine inside of the tinfoil.[4]

A grand jury indicted Drury for possession of less than one gram of methamphetamine. Drury moved to suppress the methamphetamine but did not challenge the lawfulness of his arrest. At the hearing on the motion, Officer Flores

---

[2]The tin can resembled the one that was later admitted into evidence at the hearing on Drury's motion to suppress—a small tin designed to hold Camel smokeless tobacco.

[3]Around that time, Drury made statements like, "That's not mine. That's my daughter's. Do not put that on me."

[4]The pill was Xanax.

3

confirmed that Drury was holding the tin can when she opened the closet door because she had immediately looked at his hands to check for a weapon. Officer Flores testified that she did not believe a weapon could have been located inside of the tin can, nor was Drury standing in such a place that he could have "lunged into the closet and obtained some sort of weapon" when Officer Flores retrieved the tin can from the closet floor. The trial court granted Drury's motion and issued findings of fact and conclusions of law, including the following conclusion: "Even though [Drury] had possession of the tin can at the time Officer Flores saw him and placed [Drury] under arrest, her search of the tin can was not a proper search incident to arrest."

### III. VALID SEARCH INCIDENT TO ARREST

In its only issue, the State argues that the trial court abused its discretion by suppressing the methamphetamine found in the tin can because it was obtained pursuant to a valid search incident to arrest, which allows police to search not only an arrestee, but also objects that are "immediately associated" with the arrestee. The State contends that like wallets, purses, backpacks, and other items that people carry, the tin can that Drury was holding when Officer Flores discovered him in the closet was immediately associated with him.

Drury does not directly respond to the State's argument. Instead, he contends that Officer Flores could not have performed a valid search incident to arrest when

4

she examined the contents of the tin can "because there was no reasonable belief that a weapon would be found, that [Drury] could destroy evidence[,] or that evidence for the crime in which [Drury] was arrested could be found." In other words, Drury contends that the search-incident-to-arrest exception to the warrant requirement cannot apply because none of the justifications underlying the exception's application existed.

## A. Standard of review and relevant law

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Amador*, 221 S.W.3d at 672; *see Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert.*

*denied*, 558 U.S. 1093 (2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005). Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).

A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.). One exception is the search incident to arrest. *McGee*, 105 S.W.3d at 615.

## B. The tin can was immediately associated with Drury

A search incident to a lawful arrest requires no warrant if it is restricted to (1) a search of the person or of objects "immediately associated" with the person of the arrestee or (2) a search of objects in an area within the immediate control of the arrestee. *Stewart v. State*, 611 S.W.2d 434, 436 (Tex. Crim. App. [Panel Op.] 1981). Among other things, purses, wallets, and certain types of bags have been held to be immediately associated with an arrestee, while luggage, guitar cases, a sealed cardboard box, and a foot locker—among other things—have not. *See Lalande v. State*, 651

6

S.W.2d 402, 405 (Tex. App.—El Paso 1983), *aff'd*, 676 S.W.2d 115 (1984); *see also United States v. Chadwick*, 433 U.S. 1, 15, 97 S. Ct. 2476, 2485 (1977). The court of criminal appeals has not articulated a bright-line rule for immediate association, and cases addressing the issue almost always turn on their own facts, but they do appear to share one fact in common—actual physical possession of the object at or immediately before the time of arrest.

We find three cases particularly instructive: *Curry v. State*, 831 S.W.2d 485, 487–88 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd), in which the court of appeals concluded that an immediate association existed between appellant and a brown paper sack that he dropped while fleeing from police; *Johnson v. State*, 864 S.W.2d 708, 724 (Tex. App.—Dallas 1993) (op. on remand), *aff'd*, 912 S.W.2d 227 (Tex. Crim. App. 1995), in which the court of appeals concluded that an immediate association existed between appellant and a Crown Royal bag that he dropped while fleeing from police; and *United States v. Nichols*, No. 17-40007-01-DDC, 2018 WL 504634, at *4–5 (D. Kan. Jan. 22, 2018), in which the federal district court concluded that an immediate association existed between the defendant and a container that was attached to his keys, which were dropped to the ground just as the defendant was handcuffed.

Similarly, here, Officer Flores observed Drury holding the tin can when she opened the closet door, she retrieved the tin can from the floor immediately after

7

placing handcuffs on Drury, and she immediately searched the container, first in Drury's presence and again after putting him in a patrol car. Though obviously not identical, we believe the tin can is more akin to the bags in *Curry* and *Johnson* and the container in *Nichols* than to a form of luggage or other untypical object legally incapable of immediate association with an arrestee. We agree with the State that the tin can was immediately associated with Drury.

**C.      The search of the tin can was justified by virtue of the lawful arrest**

"[T]he search incident to an arrest exception is premised upon promoting officer safety and preventing the destruction of evidence relating to the crime for which the person was arrested." *State v. Granville*, 423 S.W.3d 399, 413 (Tex. Crim. App. 2014). The trial court found that "Officer Flores did not believe that a weapon was contained inside of the tin prior to opening it," and it made no finding, nor did Officer Flores otherwise testify, that she opened the tin can to preserve evidence of the offense for which Drury was being arrested (which is not surprising because Drury was arrested on a capias). We will therefore presume for purposes of our analysis that as Drury suggests, neither justification for permitting a search incident to arrest existed when Officer Flores opened the tin can. But as the following authorities clarify, in the context of a search of the person of an arrestee, or of an object immediately associated with the person of the arrestee, it matters not.

8

In *United States v. Robinson*, the United States Supreme Court identified two types of searches incident to a defendant's arrest: (1) a search of the arrestee himself (including an object immediately associated with the arrestee's person), and (2) a search of the area within the arrestee's immediate control. 414 U.S. 218, 224, 94 S. Ct. 467, 471 (1973). Speaking of a search of the arrestee, the Supreme Court clarified that a lawful custodial arrest is all the justification needed to perform such a search:

> But quite apart from these distinctions, our more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. We do not think the long line of authorities of this Court dating back to *Weeks*, or what we can glean from the history of practice in this country and in England, requires such a case-by-case adjudication. . . . The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the lawful arrest which establishes the authority to search*, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.

*Id.* at 235, 94 S. Ct. at 477 (emphasis added). Stated otherwise, "a search may be made of the person of the arrestee by virtue of the lawful arrest." *Id.* at 224, 94 S. Ct. at 471. The Supreme Court echoed its reasoning in *Robinson* a few years later in *Michigan v. DeFillippo*: "The constitutionality of a search incident to an arrest does not depend

on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." 443 U.S. 31, 35, 99 S. Ct. 2627, 2631 (1979).

In contrast to a search of the arrestee's person and immediately associated object, a search of the area within the arrestee's immediate control must be supported by something more than just a lawful arrest. The Supreme Court identified those justifications in *Chimel v. California*, where it defined the area within an arrestee's "immediate control" "to mean the area from within which he might gain possession of a weapon or destructible evidence." 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969). The Supreme Court later revisited and clarified this standard in *Arizona v. Gant*:

> In *Chimel*, we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *That limitation*, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply.

556 U.S. 332, 339, 129 S. Ct. 1710, 1716 (2009) (citations omitted, emphasis added). Importantly, "[t]he Court's decision in *Gant* clarified and limited the 'area within the immediate control' type of automobile-search incident to arrest. Nothing in the Court's opinion in *Gant* . . . suggested it was meant to limit or abrogate the *Robinson*

10

holding of a search of the arrestee incident to arrest." *State v. Mercier*, 883 N.W.2d 478, 489 (N.D. 2016); *People v. Cregan*, 10 N.E.3d 1196, 1203 (Ill.), *cert. denied*, 135 S. Ct. 410 (2014) ("In no prior case has the Supreme Court used the area of the arrestee's control as a limit on the search of a *person* incident to arrest, and at no point in *Gant* is such a limit imposed.").

The Alaska Supreme Court recognized this justification dichotomy over forty-five years ago when addressing an issue almost identical to the one here:

> McCoy argues that even though a search of his jacket pocket may have been authorized as a search incident to arrest, the scope of the search became impermissibly intensive when Officer Weaver opened the plastic wrapped foil packet which the officer found in the pocket of his jacket. It is contended that once the foil packet was removed from McCoy's control, the police officer was not endangered by any weapons that might have been concealed in the foil packet, and that any evidence in the foil packet was safe from destruction. In such circumstances, McCoy argues that in order to look inside the packet Officer Weaver should have first obtained a search warrant.

> . . . .

> Our dissenting brothers suggest that [Justice] Frankfurter's twin rationales also supply the analysis for judging the propriety of searches of the arrestee's person as well as his environs. They reason that after the officer had taken possession of the packet there was no danger that McCoy might remove from it a weapon, an implement of escape, or destructible evidence. Consequently, they argue, the exigency justification of the search evaporated and the warrant requirement attached.

> We do not believe that this is a correct interpretation of *Chimel*. While it is clear from *Chimel* that the twin rationales suggested by [Justice] Frankfurter supply the appropriate analytic scheme to define the area 'within (the arrestee's) immediate control', it by no means follows

that they also supply the appropriate analysis for limiting searches of the arrestee's person; further, there is language in *Chimel* which suggests that the court did not intend them to do so. *Chimel* was concerned not with searches of the person, but with the wideranging warrantless searches of dwellings which *Rabinowitz* had legitimized on the ground that it was the 'place' where the arrest occurred. . . .

. . . [T]he Court did not intend to limit the intensity of searches of the person incident to a lawful arrest but was concerned instead only with limiting searches of the area surrounding him when he was arrested[.]

*McCoy v. State*, 491 P.2d 127, 131–33 (Alaska 1971) (footnotes omitted).

Other state high courts have addressed the matter more recently, including the

Washington State Supreme Court, which explained,

There are two discrete types of searches incident to arrest: (1) a search of the arrestee's person (including those personal effects immediately associated with his or her person—such as purses, backpacks, or even luggage) and (2) a search of the area within the arrestee's immediate control. A valid search of the latter requires a justification grounded in either officer safety or evidence preservation—there must be some articulable concern that the arrestee can access the item in order to draw a weapon or destroy evidence. The former search does not; in analyzing the search of an arrestee, we utilize the United States Supreme Court's rationale from [the] Fourth Amendment that "'a search may be made of the *person* of the arrestee by virtue of the lawful arrest.'" In such cases, we presume that safety and evidence justifications exist when taking those personal items into custody as part of the arrestee's person.

*State v. Brock*, 355 P.3d 1118, 1121 (Wash. 2015) (citations omitted, emphasis in

original).

The North Dakota Supreme Court reasoned, "We therefore conclude that

where the object searched is immediately associated with the arrestee, such that it is

considered a part 'of the person of the arrestee' that will be taken into custody with him, *Robinson* applies and no additional justification beyond the lawful arrest is necessary to justify the search." *Mercier*, 883 N.W.2d at 491.

And finally, addressing the continued vitality of the distinction between a search of an arrestee's person and a search of an area within an arrestee's immediate control, the Minnesota Supreme Court observed,

> There is no question that the [Supreme] Court has required either a concern for officer safety or a concern over the preservation of evidence to support the constitutionality of a warrantless search of the area where the defendant was arrested or a search of items near the defendant. But the Court has not applied these concerns as a limitation on the warrantless search of the body of a person validly arrested.

*State v. Bernard*, 859 N.W.2d 762, 769 (Minn. 2015).

In light of all of the above, and having determined that the tin can was immediately associated with Drury, Officer Flores needed no additional, "*Chimel*" justification beyond the lawful arrest to search the tin can. *See Robinson*, 414 U.S. at 235, 94 S. Ct. at 477 (holding warrantless search of crumpled cigarette pack found on arrestee's person was reasonable as part of search incident to arrest).

The trial court erred by suppressing the contents of the tin can. We sustain the State's issue.

## IV. CONCLUSION

Having sustained the State's only issue, we reverse the trial court's order granting Drury's motion to suppress and remand this cause to the trial court for further proceedings.

/s/ Bill Meier
Bill Meier
Justice

Publish

Delivered:  September 27, 2018

14