# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-24-00469-CR

---

**Dylan James Larson, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2020-541A, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Dylan James Larson was charged with possessing more than one gram and fewer than four grams of methamphetamine. *See* Tex. Health & Safety Code §§ 481.102(6), .115(c). Before trial, Larson filed a motion to suppress evidence. After a hearing, the trial court denied the motion. A jury convicted Larson, and he was sentenced to ten years' imprisonment, which was probated for five years. On appeal, Larson contends that the trial court erred by denying his motion to suppress and declining to include a Texas Code of Criminal Procedure article 38.23 instruction in the jury charge. *See* Tex Code Crim. Proc. art. 38.23(a) (requiring exclusionary instruction when legal evidence raises issue that evidence was illegally obtained). We will affirm the trial court's judgment of conviction.

# BACKGROUND

Larson was arrested and charged with possessing more than one gram and fewer than four grams of methamphetamine. He moved to suppress the evidence obtained during the traffic stop that led to his arrest, but the trial court heard and denied the motion on the morning the jury trial began. At trial, the following witnesses testified: Corey Hackenberg, a reserve officer with the Santa Clara Marshal's Office; Henry Amen, a retired Texas Department of Public Safety analyst; and Bryan Pelata, a deputy constable for the Comal County Constable's Office. Recordings from Officer Hackenberg's body and dashboard cameras were admitted into evidence and played for the jury.

The evidence presented at the suppression hearing and trial established that on the morning of February 11, 2019, Officer Hackenberg was at the intersection of FM 3009 and Nacogdoches Road in Garden Ridge, Comal County. After monitoring traffic for about five to ten minutes, Officer Hackenberg saw Larson's car approaching. The car caught Officer's Hackenberg's attention because "from my vantage point, it didn't appear as though it was displaying a front license plate, nor did it have lights on when the atmospheric conditions at the time required the headlights to be illuminated," as it was "cloudy and rainy." In response, Officer Hackenberg "safely pulled out into traffic to initiate a traffic stop of the vehicle," which was headed toward the E-Z Mart gas station. When Larson "left the lane of travel," Officer Hackenberg testified that he "did not see the vehicle using a signal to turn into the parking lot." He then activated his lights and positioned his vehicle behind Larson's but could not see a rear license plate due to "an abundance of building materials that were strapped to the rear window/trunk area and subsequently blocking the rear license plate."

2

Once Officer Hackenberg stopped his car behind Larson's in the E-Z Mart parking lot, Larson "was already getting out of the vehicle." Officer Hackenberg testified that he did not want "to lose control of the scene, whether it be the suspect leaving, other occupants leaving to do whatever, maybe flush drugs, create distractions to reach for weapons, and end up in a pretty – pretty rough spot." Because the building materials covered the back of Larson's car, Officer Hackenberg could not see who or what was in Larson's car, and Larson did not comply with Officer Hackenberg's multiple orders to get back in the vehicle. Officer Hackenberg drew his weapon but kept "it concealed behind my thigh," and since Larson was not complying with orders to get back in his vehicle, "placed him in handcuffs to eliminate his ability to reach for weapons or anything else."

Officer Hackenberg asked where Larson's wallet was, to which Larson said, "It's in my pocket, but I don't consent to search right now, sir." Officer Hackenberg pulled Larson's wallet out of his back pocket. Once Officer Hackenberg opened Larson's wallet and pulled out Larson's state ID, Larson stated that he did not have a driver's license, just a state ID. Officer Hackenberg placed Larson's wallet on top of Larson's vehicle. Officer Hackenberg testified that when he was "getting [Larson's] ID from his wallet initially," he "observed the small little bag in the wallet and just kept it in there to stay dry and for field testing later[.]" And he testified that a clear "small plastic baggie" suggested to him "that it usually contains narcotics, drugs, controlled substances, things of that sort." Officer Hackenberg conferred with dispatch and confirmed that Larson had been driving without a valid license.

Deputy Constable Bryan Pelata arrived on the scene to assist Officer Hackenberg "as a secondary officer for safety and security." When he noticed Larson's wallet on top of the vehicle, "I went ahead and secured it, due to the fact it was in an open parking lot" near the "front

3

door of the gas station." "[I]t's one of those things you don't want to walk off.  So I went ahead and just grabbed it to secure it and placed it on the front of the patrol vehicle."  Deputy Constable Pelata testified that, "generally speaking, I look inside and make sure there's no weapons or any contraband that goes with them to the jail."  When he looked inside the wallet, he found "a little clear plastic bag," which he handed to Officer Hackenberg.  Officer Hackenberg believed it to be "likely methamphetamine or cocaine" and did a field test of the "clear crystallized substance" inside the baggie before securing the baggie in his patrol vehicle.  This substance later tested positive for 1.15 grams of methamphetamine.

At trial, Officer Hackenberg acknowledged that he later learned that Larson's car did have a front license plate that was placed "off to the right."  But he maintained that from his position while monitoring traffic, "it appeared the vehicle was not displaying a front license plate."

After a two-day trial, the jury rendered a guilty verdict.  The trial court sentenced Larson to ten years' imprisonment and suspended the sentence for a five-year community supervision period.  Larson was also ordered to pay a $1,500 fine, restitution, and court costs. Larson appeals his conviction.

## DISCUSSION

In two issues on appeal, Larson argues that the trial court erred by denying his motion to suppress and his request for an article 38.23 instruction in the jury charge.

### I.    The trial court did not abuse its discretion by denying Larson's motion to suppress.

Larson argues that the trial court improperly denied his motion to suppress.  He maintains that Officer Hackenberg had no lawful basis to initiate the initial traffic stop and failed to justify his subsequent arrest such that there was no legal justification that entitled

4

Officer Hackenberg to search his pockets. Thus, Larson argues that the evidence stemming from Officer Hackenberg taking his wallet from his pocket should have been suppressed under the Fourth Amendment. *See* U.S. Const. amend. IV.

Appellate courts review a trial court's ruling on a motion to suppress for an abuse of discretion. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013). Under that standard, the record is "viewed in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'" *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). In general, appellate courts apply "a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing *de novo* the trial court's application of the law." *See State v. Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *see also Arguellez*, 409 S.W.3d at 662 (explaining that appellate courts afford "almost complete deference . . . to [a trial court's] determination of historical facts, especially if those are based on an assessment of credibility and demeanor"). "The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor." *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). When, as here, the trial court does not make explicit findings of fact, "we review the evidence in a light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact supported by the record." *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).

*Initial traffic stop*

"An officer may make a warrantless traffic stop if the 'reasonable suspicion' standard is satisfied." *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015); *accord Garza v. State*, 261 S.W.3d 361, 367 (Tex. App.—Austin 2008, pet. ref'd) ("A police officer may stop an automobile when that officer has reasonable suspicion to believe that a traffic violation has occurred."). "Reasonable suspicion exists if the officer has specific articulable facts that, combined with rational inferences from those facts, would lead the officer to reasonably conclude the person is, has been, or soon will be engaged in criminal activity." *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022). But "the likelihood of criminal activity need not rise to the level required for probable cause." *State v. Kerwick*, 393 S.W.3d 270, 273–74 (Tex. Crim. App. 2013). "The standard requires only 'some minimal level of objective justification' for the stop." *Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012) (quoting *Foster v. State*, 326 S.W.3d 609, 614 (Tex. Crim. App. 2010)).

"This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists." *Ford*, 158 S.W.3d at 492. Appellate courts "consider the totality of the circumstances" when determining the question of reasonable suspicion. *Id.* at 492–93. Further, whether an officer has reasonable suspicion is determined from the facts and circumstances actually known to the officer at the time of the detention, not what that officer could have or should have known. *State v. Duran,* 396 S.W.3d 563, 572 (Tex. Crim. App. 2013); *see State v. Griffey,* 241 S.W.3d 700, 704 (Tex. App.–Austin 2007, pet. ref'd) ("We look at only those facts known to the officer at the inception of the detention[.]"). "The standard is not what an omniscient officer would have seen, but rather what a reasonable officer would have done with what he actually did see." *Duran,* 396 S.W.3d at

6

572. Whether the facts known to the officer amount to reasonable suspicion is a mixed question of law and fact subject to de novo review. *Hamal,* 390 S.W.3d at 306; *State v. Mendoza,* 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

Larson challenges Officer Hackenberg's reasonable suspicion to make a traffic stop, arguing that Officer Hackenberg was not positioned where he could see a front license plate and thus did not make a mistake about his observation; instead, Larson argues, Officer Hackenberg "made no articulable observation whatsoever and acted on speculation alone."[1] The State maintains that Larson committed multiple traffic violations that each independently provided Officer Hackenberg with reasonable suspicion to conduct the initial traffic stop. Specifically, the State contends that, in addition to Officer Hackenberg's reasonable belief that Larson

---

[1] Larson argues that the State "stipulated that the initial stop was a warrantless arrest," and thus was required to establish probable cause, not reasonable suspicion. Larson points to the following exchange in the record that occurred before the trial court heard the motion to suppress to support his position:

> Defense counsel: So can we stipulate the initial stop was a warrantless arrest?
> The State: Yeah.
> The Court: Okay.

Larson also argues that the State stated that Officer Hackenberg "believed there was probable cause to make a stop." Because the argument at the motion to suppress and trial focused on both the initial traffic stop and Larson's arrest, the reasonable-suspicion and probable-cause standards were both discussed in these respective contexts. Given the context of the entire record, we do not construe the above statements by the State to be a stipulation or judicial admission sufficient to raise the legal standard for an initial traffic stop from reasonable suspicion to probable cause. *See Sweat v. State*, 612 S.W.3d 390, 394–95 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) ("A stipulation constitutes a judicial admission, removing the need for proof of the facts it addresses. . . . Because a stipulation is a type of judicial admission, It must be a clear, deliberate, and unequivocal statement."); *see also United States v. Cabbage*, 91 F.4th 1228, 1231 (6th Cir. 2024) ("Parties aren't allowed to stipulate to legal conclusions because courts have an independent obligation to get the law right. But parties can—and often do—agree to a set of facts." (internal citation omitted)); *Skidmore Energy, Inc. v. Maxus (U.S.) Expl. Co.*, 345 S.W.3d 672, 688 (Tex. App.—Dallas 2011, pet. denied) ("Stipulations as to legal conclusions, as opposed to facts, are not binding on courts or parties.").

7

was operating a vehicle without a front license plate, *see* Tex. Transp. Code § 504.943, Officer Hackenberg had reasonable suspicion to stop Larson for any of the following offenses: operating a vehicle with restrictions on its rear window, *see id.* § 547.613(a)(1); displaying obscured license plates on the vehicle, *see id.* § 504.945; failing to signal a turn into the E-Z Mart, *see id.* § 545.104; failing to display headlights given the atmospheric conditions, *see id.* § 547.302(a)(2); failing to equip his vehicle with "plainly visible" taillamps, *see id.* § 547.322(a), (d); and operating a vehicle without a license, *see id.* §§ 521.457, .025.

Even if we assume Larson's argument that Officer Hackenberg lacked reasonable suspicion regarding his purported lack of a front license plate is correct, Larson has not attempted to address the State's arguments regarding the other traffic violations that Officer Hackenberg testified he witnessed. For example, Larson does not challenge Officer Hackenberg's undisputed testimony that he "did not see the vehicle using a signal to turn into the parking lot." Subsection 545.104 of the Transportation Code requires that a vehicle "operator shall use the signal authorized by Section 545.106 to indicate an intention to turn," and "an operator intending to turn a vehicle right or left shall signal continuously for not less than the last 100 feet of movement of the vehicle before the turn." *Id.* § 545.104(a), (b); *see id.* § 545.106(a) (requiring operator to give turn signal by using hand and arm or lighting signal lamp); Tex. Gov't Code § 311.016(2) (providing that use of word "shall" in statute "imposes a duty"); *State v. Stephens*, 663 S.W.3d 45, 55 (Tex. Crim. App. 2021) ("Under the ordinary meaning of words, 'may' is permissive while 'shall' is mandatory."). From the evidence in this case, we conclude that Officer Hackenberg had reasonable suspicion to conduct a warrantless traffic stop based on this traffic violation. Officer Hackenberg's personal observation of Larson's failure to signal his right turn, combined with the evidence from the dash-cam video, provided objective, articulable facts supporting a reasonable

8

suspicion to stop Larson for a traffic violation. *See Castro v. State*, 227 S.W.3d 737, 742 (Tex. Crim. App. 2007) (determining that officer's observation of illegal lane change provided sufficient objective, articulable facts to support finding of reasonable suspicion that driver committed traffic violation by failing to signal lane change).

Based on our review of the record, we conclude the trial court did not abuse its discretion in denying Larson's motion to suppress based on the initial traffic stop. *See Arguellez*, 409 S.W.3d at 662. Because of our disposition, we do not reach the State's arguments about other traffic violations that it maintains would have supported Officer Hackenberg's reasonable suspicion for the traffic stop.

### Search incident to arrest

Reasonableness is the touchstone of the Fourth Amendment, and the reasonableness of a search or seizure "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). Under the Fourth Amendment, "a warrantless search of either a person or property is considered per se unreasonable subject to a few specifically defined and well established exceptions." *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003) (citation omitted). "When a search has been conducted without a warrant, the State carries the burden in a motion to suppress to establish the application of the exception for the requirement to obtain a warrant." *Marcopoulos v. State*, 548 S.W.3d 697, 703 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd).

A search incident to an arrest is one of the exceptions to the warrant requirement for searches. *United States v. Robinson*, 414 U.S. 218, 224 (1973); *State v. Drury*, 560 S.W.3d 752, 755 (Tex. App.—Fort Worth 2018, pet. ref'd); *see also Drury*, 560 S.W.3d at 755 (explaining that

9

no warrant is required for search incident to arrest if search is limited to search of person or objects "immediately associated" with person or area within person's immediate control). There are two justifications for a search incident to arrest: "(1) the need for officers to seize weapons or other things which might be used to assault [a]n officer or effect an escape, and (2) the need to prevent the loss or destruction of evidence." *State v. Granville*, 423 S.W.3d 399, 410 (Tex. Crim. App. 2014). To justify the warrantless search, the search incident to arrest cannot be remote in time or place from the arrest. *Id.* Given the purposes of the exception, the search allows "a relatively extensive exploration of the person," *Terry v. Ohio*, 392 U.S. 1, 25 (1968), and his "personal effects," *Dew v. State*, 214 S.W.3d 459, 462 (Tex. App.—Eastland 2005, no pet.). Moreover, provided that the officer has probable cause to arrest, the search incident to arrest can occur before a formal arrest. *State v. Sanchez*, 538 S.W.3d 545, 550 (Tex. Crim. App. 2017); *see also Meiburg v. State*, 473 S.W.3d 917, 924 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (noting that it was irrelevant that defendant was not arrested until after search "because the law requires only that [the police officer] had probable cause to believe that he had committed a crime") (citation omitted). If a person commits an arrestable traffic offense, he is subject to a search incident to arrest, even if the decision to arrest him is made after the search is conducted. *See State v. Ballard*, 987 S.W.2d 889, 892–93 (Tex. Crim. App. 1999); *Hart v. State*, 235 S.W.3d 858, 862–63 (Tex. App.—Eastland 2007, pet. dism'd).

Like a warrantless search, a warrantless arrest requires an exception. *See Dansby v. State*, 530 S.W.3d 213, 220 (Tex. App.—Tyler 2017, pet. ref'd) ("A police officer may arrest an individual without a warrant only if (1) there is probable cause with respect to that individual, and (2) the arrest falls within one of the exceptions specified in articles 14.01 through 14.04 of the code of criminal procedure."). One such exception is if the offense is committed in the presence

of or within the view of a peace officer. *See* Tex. Code Crim. Proc. art. 14.01(b) ("A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view").[2] "[A] warrantless arrest for an offense committed in the officer's presence is reasonable if the officer has probable cause." *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "'Probable cause' for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Id.*

The test for probable cause is objective; it is "unrelated to the subjective beliefs of the arresting officer," and "it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.*; *see Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) (explaining that "[t]he subjective intent or motivations of law enforcement officials is not taken into account when considering the totality of the circumstances"); *see also Scott v. State*, 572 S.W.3d 755, 762 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (explaining that officer's subjective reason for arrest has no relevance to probable-cause determination and that determination instead focuses on objective assessment of facts known to police officers). Probable cause requires more than mere suspicion, but it requires far less evidence than is needed to support a conviction or even to support a finding by a preponderance of the evidence. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). "Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific

---

[2] For a few traffic offenses in Texas, including speeding, an officer must issue a notice to appear, and cannot make an arrest, if the motorist is willing to sign a citation. *See* Tex. Transp. Code § 543.004.

information to form the basis for probable cause or reasonable suspicion, but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." *Smith v. State*, 58 S.W.3d 784, 792 n.10 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

"The ultimate determination of whether probable cause exists is subject to de novo review on appeal." *Baldwin v. State*, 278 S.W.3d 367, 371 (Tex. Crim. App. 2009). We will affirm the trial court's ruling if the record reasonably supports it and if it is correct on any legal theory applicable to the case. *Duran*, 396 S.W.3d at 571.

Officer Hackenberg initiated a traffic stop after noticing that, among other alleged violations of the Transportation Code, Larson failed to signal when turning into the E-Z Mart. *See* Tex. Transp. Code § 545.104; *see also id.* § 542.301 (explaining that person commits offense if he performs act or fails to perform act required by subtitle). The undisputed fact that Officer Hackenberg saw Larson commit the offense of turning without signaling his intention gave Officer Hackenberg probable cause to believe that Larson had committed an offense under Title 7, Subchapter C of the Transportation Code. *See State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005). Further, within a few minutes of the traffic stop, Larson admitted that he had only a state ID, not a valid driver's license, and had been driving without a license. Officer Hackenberg had observed Larson driving before Larson made that admission. *See* Tex. Transp. Code § 521.025 (explaining that an individual commits an offense if he drives without a valid driver's license and if he does not have a license in his possession while driving); *see also id.* § 521.461 (explaining that individual who violates provision of Transportation Code commits offense).

Under Code of Criminal Procedure Article 14.01(b), "A peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view." Tex.

12

Code Crim. Pro. Ann. art. 14.01. And under Section 543.001 of the Transportation Code, "Any peace officer may arrest without warrant a person found committing a violation of this subtitle," that is, Subtitle C. Tex. Transp. Code § 543.001. "Such an arrest for a minor traffic offense is not an unreasonable seizure under the Fourth Amendment." *Gray*, 158 S.W.3d at 469.

Accordingly, here, Officer Hackenberg had probable cause to arrest Larson and to search him incident to arrest. *See* Tex. Code Crim. Proc. art. 14.01(b) (allowing police officer to arrest someone after observing individual commit crime). The fact that the search occurred before the arrest did not render the exception inapplicable.[3] *See Dew*, 214 S.W.3d at 462 (explaining that officer has probable cause to arrest and may search individual incident to arrest if he observes defendant driving without driver's license and that whether arrest occurs before or after search is irrelevant provided that there was probable cause). Moreover, though Larson does not challenge Deputy Constable Pelata's actions on appeal, probable cause was imputed to the other officers involved in the investigation. *See Smith*, 58 S.W.3d at 792 n.10. And the search-incident-to-arrest exception still applies even though Larson was ultimately arrested for and charged with possession of illegal drugs because an officer may arrest an individual for an offense discovered during the investigation of another offense. *See Moreno v. State*, 124 S.W.3d 339, 348 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.); *see also Randolph v. State*, 152 S.W.3d 764, 771 (Tex. App.— Dallas 2004, no pet.) ("An objective standard is applied to determine the validity of the first arrest which leads to another arrest").

Likewise, searching Larson's pockets for his wallet fell within the permissible scope of a search incident to arrest. *See Baldwin*, 278 S.W.3d at 371 (recognizing that search of

---

[3] Thus, even if the initial restraint amounted to an arrest—as Larson argues above—there was probable cause for it, and the search was constitutional.

arrestee's pockets would be permissible incident to valid arrest); *Snyder v. State*, 629 S.W.2d 930, 934 (Tex. Crim. App. 1982) ("Garrison's warrantless search of appellant's wallet following the arrest was permissible as a search incident to arrest."). Because Officer Hackenberg had probable cause to arrest Larson for the traffic violations, this case is distinguishable from *Baldwin*, the case that Larson relies on in his appeal. 278 S.W.3d 367. In that case, the Court of Criminal Appeals determined that because there was no basis for a valid arrest of the defendant, the officer's conduct of reaching into the defendant's pocket was an illegal search and that no exception to the probable cause requirement applied. *Id.* at 370–72. Here, however, Officer Hackenberg had probable cause to arrest Larson at the time he reached into Larson's pocket to retrieve his wallet. *Cf. id.*, 278 S.W.3d at 371. Thus, we conclude that the search at issue here fell within the justifications for a search incident to arrest. *See Granville*, 423 S.W.3d at 410.

The trial court did not abuse its discretion in denying Larson's motion to suppress. We overrule Larson's first issue.

## II.     Larson was not entitled to an article 38.23 instruction.

Next, Larson argues that the trial court abused its discretion by denying his request for an article 38.23 jury instruction. Article 38.23(a) of the Texas Code of Criminal Procedure provides in relevant part that:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

14

Tex. Code Crim. Pro. art. 38.23(a). Under the statute, "a defendant must meet three requirements for submission of a 38.23(a) jury instruction: (1) the evidence heard by the jury must raise an issue of fact; (2) the evidence on that fact must be affirmatively contested; and (3) that contested fact issue must be material to the lawfulness of the challenged conduct in obtaining the evidence." *Chambers v. State*, 663 S.W.3d 1, 4 (Tex. Crim. App. 2022) (citing Tex. Code Crim. Pro. art. 38.23). We review a claim of alleged jury charge error by determining whether the charge was erroneous, and if it was, we conduct a harm analysis. *Id.*; *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

Larson contends that he met all three requirements and was thus entitled to an article 38.23 instruction. As to the first requirement, Larson points to Officer Hackenberg's testimony in response to two different defense exhibits. The first exhibit is a photo of the front of Larson's vehicle when parked at the convenience store in which a front license plate is visible. The text below the photo reads: "Clear show of front license plate." In response to that exhibit, defense counsel asked, "Does it show the vehicle with a front license plate?" To which Officer Hackenberg responded, "It did." The second exhibit is a still from Officer Hackenberg's body-cam video when Officer Hackenberg was getting out of his car after pulling Larson over in the convenience store parking lot. In this photo, the rear (and not the front) of Larson's vehicle is shown, and the text below the still reads: "Rear license plate not obscured." In response to that exhibit, defense counsel asked, "Again, Defense Exhibit Number 2, this is the initial view from when—and you can't—there may or may not be a front license plate on either of these, right?" To which Officer Hackenberg responded, "Correct." Larson contends that these two exchanges confirm that the jury "heard evidence that raised the factual issue of whether Hackenberg saw the front license plate," and thus that he demonstrated the first requirement necessary for an article

15

38.23 instruction. As to the second article 38.23-instruction requirement, Larson maintains that "[a] conflict exists between the officer's testimony claiming that there was no license plate and his subsequent admission that there was a license plate," citing to *Chambers*. And as to the third requirement, Larson contends that Officer Hackenberg's "sole basis for the stop was that Appellant's vehicle lacked a front license plate."

Regardless of Larson's arguments for the first and second requirements, his argument supporting the third requirement fails because it excludes Officer Hackenberg's undisputed testimony that he had at least one other basis for the traffic stop because Larson did not signal when he turned into the convenience store. *See* Tex. Transp. Code § 545.104. In other words, even assuming Larson established that there is a fact issue that is affirmatively contested—regarding whether Officer Hackenberg could reasonably see whether Larson had a front license plate—that fact issue was not material to the lawfulness of the stop because Officer Hackenberg also attested that Larson failed to signal when turning into the convenience store and thus had an independent legal basis for the traffic stop. *See Madden v. State*, 242 S.W.3d 504, 510–11 (Tex. Crim. App. 2007) ("[I]f other facts, not in dispute, are sufficient to support the lawfulness of the challenged conduct, then the disputed fact issue is not submitted to the jury because it is not material to the ultimate admissibility of the evidence. The disputed fact must be an essential one in deciding the lawfulness of the challenged conduct."); *Gerron v. State*, 119 S.W.3d 371, 377 (Tex. App.—Waco 2003, no pet.) (concluding that defendant was not entitled to article 38.23(a) instruction because evidence raised several alternative reasons for stopping him, only one of which involved disputed fact); *Markey v. State*, 996 S.W.2d 226, 230–31 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (determining that defendant was not entitled to article 38.23(a) instruction even though he denied speeding because he did not contradict other moving violation that officer

16

relied on to pull him over); *cf. Chambers*, 663 S.W.3d at 5 (noting that contested fact issue of whether sole basis for stop was objectively reasonable was material to lawfulness of stop).

Because Larson failed to meet all requirements for an article 38.23 instruction, the trial court did not err by declining to include that instruction in the jury charge. We overrule Larson's second issue on appeal.

## CONCLUSION

Having overruled Larson's issues on appeal, we affirm the trial court's judgment of conviction.

_____
Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Affirmed

Filed:   December 19, 2025

Do Not Publish

17